**Jim DUFF, Appellant,**

**v.**

**Carl LYKINS, Appellee.**

Court of Appeals of Kentucky.

May 17, 1957.

Rehearing Denied Nov. 22, 1957.

Willis W. Reeves, Maxwell P. Barret, Hazard, for appellant.

H. B. Noble, Hazard, for appellee.

CULLEN, Commissioner.

Plaintiff appellee was a passenger in an automobile when it collided with the rear end of defendant appellant's truck, which was parked after dark on Kentucky Highway No. 15 within the city limits of Hazard. The jury awarded plaintiff $5,000 for personal injuries. On this appeal defendant contends he was entitled to a directed verdict and that the instructions were erroneous.

There is little dispute about most of the important facts. The accident happened on North Main Street in Hazard, which is part of Kentucky Highway No. 15. The street is about 28 feet wide, level, straight and paved. It was illuminated by street lights approximately 150 feet on each side of the point of collision. It had been raining, and there was some evidence of fog. Defendant had parked his 1½ ton truck on the right side of the road at the curb while he crossed the street to pick up an inner tube at a filling station. He claims he left his motor running and his lights on. Plaintiff testified he did not see any lights on the truck before the collision.

The car in which the plaintiff was riding was proceeding in the same direction as the truck at about 35 or 40 miles an hour. In substance the driver testified that he didn't see the truck and simply ran into it.

Since there was a conflict in the evidence with respect to lights, defendant would be entitled to a directed verdict only if he did not violate any law, ordinance, regulation, or duty in parking at this place without lights. It is defendant's contention that he had a right to leave his truck standing, even without lights, at the point of collision, and there was no other evidence of negligence.

KRS 189.450 provides that no person shall leave a vehicle standing on the main traveled portion of a highway, "provided, however, that this section shall not be construed to prevent parking off the main traveled portion of a highway or street in a city or suburban area where such parking is otherwise permitted." This exception in the statute apparently follows our ruling in the case of Kimble v. Standard Oil, 235 Ky. 169, 30 S.W.2d 890. In that case we held that the then existing statute prohibiting parking on highways applied only to highways outside of cities and not to city streets. The opinion also points out that parking on city streets under modern conditions is necessary.

KRS 189.030(1) requires lights on vehicles generally. Subsection (2) of this statute provides:

"Cities may by ordinance designate certain well-lighted streets or parts of the streets as being sufficiently illuminated during certain periods as to make lights unnecessary. In this case subsection (1) shall not apply to vehicles parked in those streets during such periods."

It will be observed that both the above quoted statutes recognize the necessary control that cities must exercise over the parking of vehicles on city streets. A motorist

may park on a city street in the daytime if it is "permitted" by the city, and vehicles may be parked at night without lights if the city by ordinance has "designated" that particular street. The question before us has not been decided before and may be stated as follows: In the absence of a city ordinance either permitting or prohibiting parking on a city street which is a part of a state highway, is it lawful to park at night without lights?

■ It may be noted here that police officers of the city of Hazard testified they had been instructed not to permit parking at the place where this accident occurred. The source of this prohibition is not shown, and we cannot give an unauthorized police regulation (if it existed) the force of law.

■ The statutes involved are somewhat ambiguous, and we must construe them in the light of the realities of the situation. Traffic conditions on city streets are quite different from those on the open highway outside the city limits. This is a matter of common knowledge and was recognized in both statutes above referred to.

Under present day conditions the traveling motorist invariably is made aware of changing traffic controls as he approaches and reaches the city limits of any sizeable town. He is met with speed limit and caution signs which require him to be alert in the observance of such local controls. We might say that while driving through a city a motorist is continually subject to the control of traffic lights and signs. Practically all the signs are either directional or prohibitory.

As recognized in the Kimble case, heretofore cited, parking is necessary on city streets. Since there are so many prohibitory signs, motorists naturally assume that parking is permitted where it is not prohibited. As a matter of fact, KRS 189.450(4) (d) apparently recognizes the right of a motorist to park a vehicle on a city street unless there is an official sign which prohibits stopping.

■ In view of the considerations outlined above, we think it clear under KRS 189.450 that in the absence of a city ordinance (or lawful police regulation authorized by ordinance) prohibiting parking, a person may lawfully park in a proper manner on a city street in the daytime. We do not have before us and do not decide that such prohibition must be made effective by a street sign, but certainly in the absence of a proper legislative act of the city we will not imply a prohibition.

Our question is then narrowed to whether or not the same principle applies with respect to parking at night without lights. KRS 189.030(2) provides that cities may by ordinance designate streets as being sufficiently illuminated to make lights unnecessary. The statute does not say that unless such an ordinance exists a party may not park without lights upon city streets. We are of the opinion that this statute must be read with KRS 189.450 and the interpretation must be the same. We take this view because parking is parking, and the lighting of vehicles relates to their operation. If a motorist lawfully may park a vehicle at a particular place in the daytime he reasonably assumes he may leave it there after dark as a parked vehicle.

Practical considerations are also evident here. Ordinarily city streets are sufficiently lighted to enable traveling motorists to observe traffic conditions. They are aware that the right hand lane may have been appropriated for parking purposes. In addition, as we have suggested above, the motorist operating a vehicle on a city street is required to proceed at a slower speed than on the highway, and he must anticipate more congested conditions. For this reason lights on parked vehicles on city streets are not as necessary from the standpoint of traffic safety as they might be in other places and under other conditions.

■ We think that a fair construction of the parking and lighting statutes is that a motorist properly may park his vehicle

without lights on a city street unless the city has by ordinance (or lawful regulation thereunder) prohibited such parking.

■ Since the defendant did not stop his vehicle in violation of law, and since no other negligence on his part was shown, we believe he was entitled to a directed verdict. We are cognizant of the extreme difficulty the trial judge had in passing upon this question in view of the joint and several ambiguities of the statutes involved. Having failed to direct a verdict, the court should have sustained defendant's motion for a judgment notwithstanding the verdict.

We find it unnecessary to consider the other grounds of reversal raised by the defendant.

The judgment is reversed with directions to enter judgment for the defendant.

MONTGOMERY, Judge (dissenting).

I respectfully dissent because I feel that the majority opinion interpretation of KRS 189.450 is wrong as to what constitutes "the main traveled portion of a highway".

The construction placed on "highway" therein is that it refers only to a roadway outside the prescribed limits of a city or town. This interpretation is based on the 1930 opinion in Kimble v. Standard Oil Co., 235 Ky. 169, 30 S.W.2d 890, 891, which made a distinction between highways outside cities and city streets. The basis for the distinction is that "highways outside cities have a berm or shoulder on either side of the paved or main traveled portion of the highway" while "city streets are usually paved from curb to curb, and all of the street is ordinarily used for travel by motor vehicles". This, obviously, is not a valid distinction today, and is so recognized by the broad definition of "highway" in KRS 189.010, enacted in 1942 and re-enacted in 1956, which is, in part as follows:

"As used in this chapter, unless the context requires otherwise: * * *

"(2) 'Highway' means any public road, street, avenue, alley or boulevard, bridge, viaduct or trestle and the approaches to them."

Under this definition of "highway", no distinction is made between that portion of a roadway bearing a federal or state route designation which may be located outside the city limits and the portion within the city limits. To illustrate the fallacy of the distinction in the instant case, one only has to contemplate the difference there might be on either side of the invisible line marking city limits across a highway, or the difference between built up residence or business areas outside and inside city limits, or whether a highway passing through an unincorporated village or town is a highway or a street within the meaning of the majority opinion. It seems that the distinction is based on factors unrelated to the problem to be solved by KRS 189.450, and is contra to the express provision of the statute which includes "street", etc.

The distinction based on the type of construction of the road as used in the Kimble case is not adequate. There are highways passing through urban areas either as one-way or through streets, boulevards, freeways, expressways, or whatever term is used, in which the entire paved surface of the road is used as a main traveled highway without any parking, while in other urban areas a portion of the highway surface may be used or designated for parking. Also, there are highways passing through open country where no shoulder or berm is present, or where a curb may be on either or both sides of the paved surface. It is felt that the proper rule is to submit to the jury, as was done in the instant case, the question of whether the obstructing vehicle was located on the main traveled portion of the highway as determined by the usage of the traveling public, with the burden being on

the operator of the parked vehicle to show that it was not. This is the tenor of KRS 189.450, as recently interpreted in Banner Transfer Co. v. Morse, Ky., 274 S.W.2d 380.

KRS 189.450 seeks to prevent the highways from being obstructed by vehicles and to promote the convenience and safety of the traveling public in its use of the highways by assuring it of a way free from obstruction. It is the traveling motorist who pays the taxes to maintain the highways, not the fellow who parks his car on the street. In the interest of safety, the motorist is entitled to drive on the highway, knowing that his way will be clear and that there will be no obstruction blocking the way, hidden by darkness or weather conditions, curve, or brow of a hill. The roadways, whether called highways or streets, are built for travel, not parking. The safety and convenience of the traveling public should be given priority, especially in these days of high powered motor vehicles and fast driving.

This construction of KRS 189.450 is in harmony with KRS, Chapter 177, entitled "State and Federal Highways, etc.", enacted in 1942. By this act, all "city streets or portions thereof, including viaducts and bridges, over which state and Federal highways are routed" are made a necessary and integral part of the State Highway System of roads. Such streets were declared to serve a state purpose and to be for the general benefit of the state. Their maintenance became a state function. KRS 177.041. The State Commissioner of Highways is authorized to assume responsibility for regulating traffic over such streets. KRS 177.046. The rule of the Kimble case, upon which the majority opinion is based, has been abrogated and rendered obsolete by the enactment of the above statutes and by modern traffic and highway development.

In the instant case, there was evidence in behalf of appellee that appellant's truck was parked on the main traveled portion of Kentucky Highway No. 15, a part of North Main Street in Hazard. The collision occurred about 5 p. m. on December 29, 1954. The weather was rainy and foggy. Visibility was bad because of the weather and oncoming darkness. Under these circumstances, appellant had stopped his truck, with inadequate lights, on the surface of the highway used for traveling at a place not designated for parking and where such a stopped vehicle would not normally be anticipated.

The jury was the judge as to whether this was a proper stopping on the highway under the instruction based on the statute. Its verdict should be upheld. The burden was on appellant to bring himself within one of the exceptions in KRS 189.450. The failure of the city to prohibit parking there is no valid exception under the statute and ignores its purpose and intent to prevent all stopping on the main traveled portion of the highway except under the named circumstances.

MILLIKEN, C. J., joins in this dissent.