[No. C050338. Third Dist. June 22, 2006.]

TROY MINCH, Plaintiff and Appellant, v.
DEPARTMENT OF THE CALIFORNIA HIGHWAY PATROL, Defendant
and Respondent.

896

**COUNSEL**

Altemus & Wagner and Darryl L. Wagner for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Darryl L. Doke and Jill Buttram Scally, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**SCOTLAND, P. J.**—While plaintiff Troy Minch, a tow truck operator, was working at the scene of a traffic accident, a passing motorist lost control of his vehicle and hit plaintiff. Severely harmed, plaintiff brought a personal injury action against the California Highway Patrol (CHP), alleging that CHP officers at the scene were negligent in "failing to properly monitor and/or regulate traffic within the vicinity of the [accident scene]." Finding the officers had no duty of care as to plaintiff, the trial court entered summary judgment in favor of the CHP. Plaintiff appeals.

We agree with the trial court. As we will explain, undisputed evidence demonstrates the CHP officers did not have a duty of care toward plaintiff because they did not create or increase the risk of harm that led to plaintiff's injuries, and the circumstances did not establish a special relationship between the officers and plaintiff such that the officers would have had a duty to protect him. We also reject his claim that the provisions of the CHP Officer Safety Manual establish the officers owed plaintiff a duty in tort. Although the manual would be admissible evidence on the question of breach of duty, if a duty of care existed, the manual was not formally adopted as a regulation. Thus, it does not have the force of law and its provisions do not establish a duty of care on the part of CHP officers. Accordingly, we shall affirm the judgment.

## FACTS

Since this is an appeal from the entry of summary judgment, we independently examine the record to determine whether triable issues of fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) In doing so, we view the evidence in a light most favorable to plaintiff, the losing party. (*Id.* at p. 768.) Viewed in that light, the record presents the following facts:

On January 12, 2003, the driver of a Volkswagen Jetta was involved in a single-car accident on San Benito Avenue in Tehama County. San Benito Avenue is a two-lane road with a double yellow line in the center and solid white fog lines separating the traffic lanes from the shoulder. To the north of the accident site, the road is straight such that southbound traffic would have a clear view of the site. To the south of the accident site, the road curves such that northbound traffic would be coming around a curve shortly before the accident site.

The accident occurred around midday. It had been cloudy and raining, and the road was wet. CHP Officer Tim Larios and his supervisor, Acting Sergeant Vincent Zambrana, responded to the scene. They observed the Jetta upside down in a ditch next to the southbound lane of the road. Larios advised CHP dispatch that a tow truck was needed.

Plaintiff, an employee of J & L Towing, was notified by his employer to respond to the scene. At the scene, the CHP officers did not give directions to plaintiff regarding the extraction of the Jetta from the ditch; rather, plaintiff relied on his own knowledge and experience. While he worked, plaintiff turned on the overhead amber beacons, flashing emergency lights, and headlights of the tow truck. He used his tow truck to roll the Jetta over and extract it from the ditch. He hooked the Jetta to the tow truck and drove 15 to 20 feet forward onto the shoulder of the road. He parked the tow truck facing southbound with its driver-side wheels resting on the solid white fog line. The officers did not direct plaintiff to remain at the scene and did not direct him where to park. After the Jetta was successfully extracted, Sergeant Zambrana left the scene and Officer Larios remained.

After speaking with the owner of the Jetta about insurance and other things, plaintiff went to the cab of the tow truck to get his receipt book. He approached the truck on the driver's side, i.e., traffic side. Although plaintiff had been taught to stay on the nontraffic side of the truck for safety purposes, he explained that he approached on the traffic side because the passenger door had automatically locked and he had forgotten to unlock it.

While plaintiff was approaching the cab of the tow truck, Officer Larios had positioned himself across the road and to the south of the accident site.

Larios was using hand signals to warn northbound traffic to slow down as it came around the curve. Several northbound vehicles passed and heeded Larios's signals. Larios then saw two white pickup trucks approaching. The first truck was driven by Fidel Reyes. The second truck, being driven by Juvenal Garcia, was following Reyes, whom Garcia described as his uncle.

Reyes slowed down when he saw Officer Larios signal him to do so. Garcia, apparently inattentive, did not immediately slow down. When he noticed the brake lights on Reyes's truck, he hit his brakes hard, causing the wheels to lock, and turned to the left. The truck slid out of control. Larios yelled a warning to plaintiff, who nonetheless was hit by Garcia's truck, which slid across the road, struck the tow truck, knocked plaintiff to the ground, and came to rest against the Jetta. Plaintiff suffered severe personal injuries when he was struck.

Plaintiff filed a complaint for damages against the CHP, seeking recovery on theories of general negligence and a dangerous condition of public property.[1] He moved for summary adjudication, asking the trial court to hold that the CHP owed a duty of care and that no statutory immunity applied to the CHP. The CHP moved for summary judgment, or in the alternative summary adjudication, asserting that the CHP did not owe a duty of care, that the state did not own or control the roadway, and that the CHP is immune from liability pursuant to Government Code section 820.25.

The trial court denied plaintiff's motion for summary adjudication and granted the CHP's motion for summary judgment. With respect to the claim of general negligence, the court concluded that the CHP did not owe a duty of care to plaintiff. With respect to the claim of a dangerous condition of public property, the court concluded that the uncontroverted evidence established that San Benito Avenue was not owned, controlled, or maintained by the state on the date of the accident.

Plaintiff appeals, raising issues solely with respect to the claim of general negligence.

## DISCUSSION

■     The well-known elements of a cause of action for negligence are duty, breach of duty, proximate cause, and damages. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 614 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) The

---

[1] Plaintiff also named as defendants the State of California, Sergeant Zambrana, Officer Larios, and Garcia. The state was named solely because the CHP is a state agency. The record does not show whether Garcia was served with summons, and he is not involved in this appeal. Larios and Zambrana were dismissed by stipulation of the parties.

threshold element of the existence of duty is a question of law to be resolved by the court. (*Ibid.*) Duty "is not an immutable fact of nature ' "but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' " (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].)

A

The question of the duty of a law enforcement officer toward the public has been the subject of a number of judicial opinions.

In *Davidson v. City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894] (hereafter *Davidson*), a man stabbed Yolanda Davidson while she was using a laundromat. At the time of the stabbing, police officers had the laundromat under surveillance for the purpose of preventing assaults and apprehending the perpetrator of three stabbings that had occurred there or at nearby laundromats. Thus, the officers knew Davidson was in the laundromat. When the officers saw the man enter and leave the laundromat several times, they believed that he was the likely perpetrator of at least one of the prior assaults. Nevertheless, the officers did not warn Davidson, and she eventually was stabbed inside the laundromat. (*Id.* at p. 201.)

The Supreme Court concluded the officers had no duty to warn or to otherwise protect Davidson for the following reasons:

■ Ordinarily, a person does not have a duty to control the conduct of another or to warn those endangered by such conduct. (*Davidson, supra*, 32 Cal.3d at p. 203.) However, such a duty may arise if (1) there is a special relationship between the person and a third party which imposes a duty upon the person to control the third party's conduct, or (2) there is a special relationship between the person and the injured party which gives the injured party a right to protection. (*Ibid.*)

With respect to the police officers' relationship with the man who stabbed Davidson, the officers' mere proximity to the assailant, even with knowledge of his "assaultive tendencies," did not establish a special relationship imposing a duty to control the assailant's conduct. (*Davidson, supra,* 32 Cal.3d at p. 205.)

There also was no special relationship between the officers and the victim because the officers did not create the peril, their conduct did not change the risk to the victim that would have existed in their absence, and the victim was unaware of the officers' presence and did not rely upon them for protection. (*Davidson, supra,* 32 Cal.3d at p. 208.) The court distinguished cases upon

which the victim relied, noting that the defendants in those cases had created the risk or contributed to, increased, or changed the risk that would otherwise have existed. (*Id.* at pp. 207–208.)

In *Williams v. State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137] (hereafter *Williams*), Della Williams was injured when a piece of heated brake drum crashed through the windshield of a car in which she was a passenger. CHP officers arrived to investigate. According to Williams, the officers negligently investigated the accident and virtually destroyed her opportunity of obtaining compensation for her injuries. (*Id.* at pp. 21–22.)

The Supreme Court concluded there was no special relationship that would create a duty on the part of the officers to secure information or preserve evidence for civil litigation between Williams and third parties. (*Williams, supra,* 34 Cal.3d at p. 21.) The court explained:

Ordinarily, a person who has not created a peril has no duty to come to the aid of another. (*Williams, supra,* 34 Cal.3d at p. 23.) However, under the " 'good Samaritan' " rule, a person who undertakes to come to the aid of another is liable if "his failure to exercise such care increases the risk" of harm or "the harm is suffered because of the other's reliance upon the undertaking." (*Ibid.*) These rules apply to law enforcement officers as well as private citizens. (*Id.* at p. 24.) Law enforcement officers may be liable for affirmative acts that create a peril or increase the risk of harm, or for failing to act after promising to do so. (*Ibid.*)

An express promise and reliance thereon are not indispensable elements of a special relationship. "Such a relationship has also been found when the *conduct* of a police officer, in a situation of dependency, results in detrimental reliance on him for protection." (*Williams, supra,* 34 Cal.3d at p. 25, original italics.) However, the court expressly rejected the view that a special relationship can arise solely from the fact of dependency. (*Id.* at pp. 26, 28, fn. 9, disapproving *Clemente v. State of California* (1980) 101 Cal.App.3d 374, 379–380 [161 Cal.Rptr. 799].)

The court concluded there was no duty because the officers did not create the peril; they did not affirmatively contribute to, increase, or change the risk which otherwise existed; they did not voluntarily assume to protect the plaintiff's prospects for civil recovery; and there were insufficient allegations to establish a special relationship, namely detrimental reliance on the officers' conduct or statements which induced a false sense of security and thereby worsened the plaintiff's position. (*Williams, supra,* 34 Cal.3d at pp. 27–28.)

Two older decisions of the Court of Appeal also warrant discussion.

In *Mann v. State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82] (hereafter *Mann*), a CHP officer saw two cars stranded in the speed-change lane of the freeway. He stopped behind them, turned on his flashing amber light, and tried to start one of the cars. When a tow truck arrived, the officer left without advising that he was leaving, without putting out flares, and without waiting for the tow truck with its flashing amber light to assume a protective position. A few minutes after the officer left, an elderly driver sideswiped one of the cars and struck the people around them.

Concluding that a special relationship could have been found, the Court of Appeal reversed the directed verdict entered in favor of the state. (*Mann, supra,* 70 Cal.App.3d at pp. 776–777, 779.) Saying that the special relationship theory was an expanding area in tort law and "the law appears to be heading toward a recognition of the duty to aid or protect in any relation of dependence or of mutual dependence" (*id.* at pp. 779–780), the court concluded the plaintiff was dependent on the officer as an expert charged with traffic safety. (*Id.* at p. 780.) Thus, once the officer stopped and observed the plaintiff's danger, he had a duty to use ordinary care to protect the plaintiff. (*Ibid.*)

In *Mikialian v. City of Los Angeles* (1978) 79 Cal.App.3d 150 [144 Cal.Rptr. 794] (hereafter *Mikialian*), a collision caused a car to come to rest with its rear end protruding into the roadway. The driver was arrested, so police officers called for a tow truck to impound the car. The tow truck driver attached the car to his truck, drove across the road, and parked next to the curb. He then had to wait for an inventory report from the officer in charge. As he did so, he attempted to install a dolly under the front wheel of the towed car. He was working on the traffic side of the car when he was struck by a hit-and-run driver. (*Id.* at pp. 153–155.) Concluding that the police officers did not owe a duty of care to the tow truck driver, the Court of Appeal affirmed the nonsuit granted in favor of the city. (*Id.* at pp. 157, 163.)

Plaintiff relies heavily on *Mann*. However, that decision is an anomaly. Indeed, although *Mann* has not been expressly disapproved, the legal foundations of its holding have since been rejected by the California Supreme Court.

In *Mann*, the observation that the law appeared "to be heading toward a recognition of the duty to aid or protect in any relation of dependence" was pivotal to the court's opinion. (*Mann, supra,* 70 Cal.App.3d at pp. 779–780.) This was made clear in the court's subsequent opinions in *Mikialian, supra,* 79 Cal.App.3d at page 159, and *Clemente v. State of California, supra,* 101 Cal.App.3d at pages 379–380. However, the Supreme Court has repudiated the notion that dependency alone is sufficient to establish duty. (*Williams, supra,* 34 Cal.3d at pp. 26, 28, fn. 9.)

In *Mann*, the court appeared to suggest that knowledge of another's peril can establish duty. (*Mann, supra,* 70 Cal.App.3d at p. 780.) Such a view has been repudiated by the Supreme Court. (*Davidson, supra,* 32 Cal.3d at p. 205.)

In *Mann*, the court suggested that a person's job as a traffic safety officer imposes a duty in tort to protect stranded motorists (*Mann, supra,* 70 Cal.App.3d at p. 780), a view now repudiated by the Supreme Court. (*Williams, supra,* 34 Cal.3d at p. 24; *Davidson, supra,* 32 Cal.3d at p. 205.)

And in *Mann*, the court recognized that the plaintiff's claim was based on nonfeasance, a failure to act, but concluded that when the officer learned of the plaintiff's plight, the officer had a duty to exercise ordinary care to protect the plaintiff. (*Mann, supra,* 70 Cal.App.3d at pp. 779–780.) But the duty of ordinary care is restricted to instances of misfeasance. (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 716 [110 Cal.Rptr.2d 528, 28 P.3d 249] (hereafter *Lugtu*).) In instances of nonfeasance, the defendant's duty is limited to the extent of his undertaking. (*Williams, supra,* 34 Cal.3d at pp. 26–28.)

█ *Mann* was viewed by the Legislature as a dangerous extension of the liability of peace officers and their employers. (*Williams, supra,* 34 Cal.3d at p. 25.) In response, the Legislature enacted Government Code section 820.25 as an urgency statute to provide officers with flexibility in assisting stranded motorists and to avoid public responsibility for damages on this theory of expanded damages. (Stats. 1979, ch. 806, §§ 1–2, p. 2796.) That section deals with immunities and, in view of our conclusion here, need not be discussed.

What remains of the decision in *Mann*? Certainly, the legal principles upon which it relied do not remain. The Supreme Court has characterized *Mann* as a case in which the officer contributed to, increased, or changed the risk that otherwise would have existed. (*Davidson, supra,* 32 Cal.3d at p. 208; see also *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1129 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Actually, the claim in *Mann* was based entirely upon the officer's failure to protect the plaintiff from the peril in which the officer found him. (*Mann, supra,* 70 Cal.App.3d at p. 779.) Making no suggestion that the officer affected that peril in some manner, *Mann* said the plaintiff's claim was based upon a failure to act, rather than an affirmative act, causing harm. (*Ibid.*) The Supreme Court also has characterized *Mann* as a case in which the officer's conduct, in a situation of dependency, induced detrimental reliance on him for protection. (*Williams, supra,* 34 Cal.3d at p. 25.) However, the facts set forth in *Mann* did not indicate the plaintiff justifiably relied on the officer's voluntary assumption of a duty of protection (*Mann, supra,* 70 Cal.App.3d at pp. 776–777); indeed, it would seem obvious that the

plaintiff, standing by a stranded car, would have seen the officer leave and thus could not rely upon his continued presence. In any event, *Mann* did not rely upon that theory, which *Mann* referred to as an estoppel theory of liability and regarded it as unnecessary. (*Mann, supra,* 70 Cal.App.3d at p. 780, fn. 6.)

Thus, it appears that *Mann* has been cited for propositions it did not address, while the factors upon which it relied have been entirely repudiated. In other words, *Mann* is a legal derelict that exists solely to confuse.

We, of course, accept the rule that a police officer who undertakes to come to the aid of another will be liable if his failure to exercise care increases the risk of harm or the harm is suffered because of the other's reliance on the undertaking. (*Williams, supra,* 34 Cal.3d at pp. 23–24.) But we find *Mann* to be of little value as precedent in that respect.

In subsequent decisions, the Courts of Appeal have made it plain that the special relationship rule is not expansive, as *Mann* suggested; rather, it is narrow, to be applied in a limited class of unusual cases. (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 279 [80 Cal.Rptr.2d 196]; *M.B. v. City of San Diego* (1991) 233 Cal.App.3d 699, 704–705 [284 Cal.Rptr. 555].) The rule is not triggered "simply because police officers responded to a call for assistance and took some action at the scene." (*Adams v. City of Fremont, supra,* 68 Cal.App.4th at p. 279; see *Von Batsch v. American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1122–1123 [222 Cal.Rptr. 239].) And it is not enough to assert that the law enforcement officers took control of the situation. (*Adams v. City of Fremont, supra,* 68 Cal.App.4th at p. 280.) In many instances, courts have concluded that there was an absence of duty and, thus, have rejected claims of negligence against law enforcement officers. (See, e.g., *Adams, supra,* 68 Cal.App.4th at p. 288; *M.B. v. City of San Diego, supra,* 233 Cal.App.3d at pp. 704–706; *Lopez v. City of San Diego* (1987) 190 Cal.App.3d 678, 682 [235 Cal.Rptr. 583]; *Von Batsch v. American Dist. Telegraph Co., supra,* 175 Cal.App.3d at pp. 1124–1125; *Jackson v. Clements* (1983) 146 Cal.App.3d 983, 988–989 [194 Cal.Rptr. 553]; *Shelton v. City of Westminster* (1982) 138 Cal.App.3d 610, 621–622 [188 Cal.Rptr. 205].)

B

Turning to the facts of this case, some clarification is necessary. In his brief, plaintiff frequently refers to the process of extracting the Jetta from the ditch. For example, he states that while extracting the Jetta, he was required to position the tow truck within the lane of travel and was required to walk within the lanes of travel to retrieve tools and equipment, and to operate the tow truck controls. He asserts that while a tow truck driver is within a lane of

travel to extract a vehicle, the CHP is required to use its best efforts to keep the area and the driver safe from oncoming traffic.

The record establishes that while plaintiff extracted the Jetta, the CHP officers placed a patrol vehicle with flashing lights within the southbound lane about 20 to 30 feet north of the tow truck. The officers directed traffic, with one officer standing along the southbound lane to the north of the tow truck and another officer standing along the northbound lane to the south of the tow truck.

The officers successfully protected plaintiff as he extracted the Jetta. Plaintiff was not injured during that process. Rather, his injury occurred after he had extracted the Jetta and while he had parked the tow truck, with the Jetta in tow, for business purposes. The officers did not require that plaintiff remain at the scene, and they did not tell him where to park after he extracted the Jetta. Thus, negligence, if any, in the manner in which the officers directed traffic during the extraction process did not result in the harm that occurred and cannot serve as the basis for recovery in tort. (*M.B. v. City of San Diego, supra*, 233 Cal.App.3d at p. 706.)

Plaintiff asserts that shortly after his arrival with the tow truck, Sergeant Zambrana departed, leaving only Officer Larios. Plaintiff later argues: "Just like in *Mann, supra*, after summoning the tow truck, Sergeant Zambrana left the scene without warning, and with him left any warning lights that may have been on in his vehicle." In fact, the record establishes that Zambrana stayed at the scene throughout the extraction process. After the Jetta was extracted and plaintiff had parked on the shoulder of the road, the officers walked to a position behind the Jetta and then Zambrana left. Plaintiff was fully aware when Zambrana left.

Plaintiff repeatedly claims he was injured while preparing the Jetta for transport. However, in his deposition, plaintiff was clear that the injury occurred after the Jetta was in tow and while he was walking to the cab of the truck to get his receipt book for business purposes.

■ Under the circumstances presented, we agree with the trial court that the CHP officers did not owe a duty of care in tort to plaintiff. They did not create the risk of harm. After plaintiff extracted the Jetta, they did not direct him to stay at the scene or tell him where to park. They did not lock the passenger door of the tow truck, thus compelling plaintiff to walk on the traffic side of the truck. Plaintiff was not in a position of dependency on the officers, and they did not say anything to indicate that they would guarantee his safety. Plaintiff could not have detrimentally relied upon the officers' conduct when he walked toward the cab of the truck to retrieve his

receipt book; at that time, he was fully aware that Sergeant Zambrana had departed and, by plaintiff's testimony, Officer Larios was behind the Jetta talking to the owner.[2]

These facts do not give rise to a duty in tort. (*Mikialian, supra,* 79 Cal.App.3d at p. 163.)

## C

Plaintiff argues that regardless of the normal standards of duty, the provisions of the CHP Officer Safety Manual establish that the officers owed him a duty. We disagree.

■ Evidence Code section 669 establishes a presumption of a failure to exercise due care when a person violates a statute, ordinance, or regulation of a public entity. In *Peterson v. City of Long Beach* (1979) 24 Cal.3d 238 [155 Cal.Rptr. 360, 594 P.2d 477], the Supreme Court held that a city police department manual was a quasi-legislative measure that came within the provisions of Evidence Code section 669. (24 Cal.3d at p. 247.) However, the Legislature subsequently enacted Evidence Code section 669.1 to provide that a rule, policy, manual, or guideline of state or local government setting forth standards for employees in the conduct of their employment shall not be considered a statute, ordinance, or regulation unless formally adopted in the manner necessary for the adoption of statutes, ordinances, and regulations.

The provisions of the CHP Officer Safety Manual were not formally adopted as regulations. (*Lugtu, supra,* 26 Cal.4th at p. 720.) Nevertheless, it can play a role in a negligence action. Under Evidence Code section 669.1, the manual cannot be read to establish a standard of care within the meaning of Evidence Code section 669; however, it may be admitted into evidence for the trier of fact's consideration in determining the issue of negligence if there otherwise is a duty. (26 Cal.4th at pp. 720–721.)

Plaintiff asserts that in accordance with *Lugtu,* the CHP Officer Safety Manual can establish the existence of a duty but not the scope of that duty. *Lugtu* did not so hold. The court addressed the duty question under ordinary principles of law, without any mention of the provisions of the manual. (*Lugtu, supra,* 26 Cal.4th at pp. 715–718.) The court referred to the manual solely

---

[2] In his deposition, plaintiff testified that after the Jetta was extracted, the officers met at the area behind the Jetta and then Sergeant Zambrana left. Officer Larios was behind the Jetta until plaintiff walked to the cab of the truck to retrieve plaintiff's book, at which time Larios crossed the road in order to signal northbound traffic to slow down. Curiously, plaintiff refers to this as an "act of leaving his post."

with respect to the CHP's argument that the court should limit the scope of the CHP's duty. (*Id.* at p. 718.)

The CHP Officer Safety Manual was not adopted pursuant to the Administrative Procedure Act, does not have the force of law, and does not establish a duty in tort on the part of CHP officers. (*Lugtu, supra,* 26 Cal.4th at pp. 720–721; *Posey v. State of California* (1986) 180 Cal.App.3d 836, 848–849 [225 Cal.Rptr. 830].) The provisions of the manual would be admissible evidence on the question of breach of duty but do not substitute for judicial determination whether a duty was owed.

In any event, plaintiff does not raise a triable issue of fact with respect to whether the officers violated any provision of the safety manual. He notes they did not set up flares. But the manual states that flares should be used "[w]hen deemed necessary by the officer," thus leaving the matter to the officer's discretion. The manual admonishes officers to "[b]e alert to traffic moving in the opposite direction and be prepared to direct it as deemed necessary." Again, the manual confers discretion. Moreover, in his deposition, plaintiff testified that he, Officer Larios, and the owner of the Jetta were off of the road behind the car when plaintiff went to the cab of the tow truck to retrieve his receipt book after the Jetta was extracted. When plaintiff went to the cab of the truck, Larios crossed the road to signal northbound traffic to slow down. Larios's actions were entirely consistent with the safety manual.

Plaintiff does not cite the safety manual because there were specific violations of it; instead, he cites it because it admonishes CHP officers to perform traffic control functions when necessary. This, in plaintiff's view, imposes a mandatory duty in tort. The argument is inconsistent with the decision in *Williams, supra,* 34 Cal.3d at page 24. It is inconsistent with Evidence Code section 669.1. It would give an internal employee manual greater effect than a formally adopted statute, ordinance, or regulation. (6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 892, pp. 123–124.) Hence, we reject the argument.

■ According to plaintiff, the CHP and the trial court confused the issues of misfeasance and nonfeasance. The misfeasance/nonfeasance dichotomy has been criticized. (*Adams v. City of Fremont, supra,* 68 Cal.App.4th at pp. 287–288.) However, it remains a part of our law. (*Lugtu, supra,* 26 Cal.4th at pp. 716–717.) Simply put, misfeasance occurs when the defendant's affirmative actions create a risk of harm to the plaintiff; nonfeasance involves the failure to save the plaintiff from a peril that was not of the defendant's making. (*Ibid.*) All persons are ordinarily obligated to exercise due care in their own actions so as not to create an unreasonable risk of injury to others.

(*Ibid.*) This standard applies to instances of misfeasance. Nonfeasance requires a special relationship obligating the defendant to act to protect the plaintiff. (*Ibid.*)

In *Lugtu*, a CHP officer stopped a car for a traffic violation. In doing so, the officer directed the driver to stop on the center median of the freeway. While the car was stopped on the median, it was struck by a negligent driver, seriously injuring passengers in the car that had been stopped by the CHP. (*Lugtu, supra*, 26 Cal.4th at p. 709.) The Supreme Court held that the plaintiffs' action was based upon misfeasance, rather than nonfeasance. (*Id.* at p. 717.) This was because the officer made the affirmative decision to require the driver to stop on the center median. (*Ibid.*) That did not make the officer the guarantor of the plaintiffs' safety; but it did require him to exercise due care in choosing the place where the car would be stopped. (*Ibid.*; see also *McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 261–262 [74 Cal.Rptr. 389, 449 P.2d 453].)

Plaintiff asserts that his lawsuit is based upon the CHP's misfeasance, not nonfeasance. However, he has not identified specific conduct by which the officers created a risk of peril. Rather, plaintiff's action is based on the generic claim that the officers did not adequately protect him from the risk of harm. This claim is, in all significant respects, identical to the claim in *Mikialian, supra*, 79 Cal.App.3d 150, where the court recognized the claim was one of nonfeasance and upheld a judgment of nonsuit for lack of a duty in tort. (*Id.* at pp. 159, 163.) We agree with the decision in *Mikialian* and conclude that the same result must occur here.

In this case, the trial court said in reaching its decision: "Plaintiff has failed to establish, either through witnesses or expert testimony, that the officers did anything wrong." Plaintiff asserts that whether the officers did anything wrong is a matter that goes to breach of duty, and that it was error for the court to make such a finding in resolving the question of duty.

There is some overlap in the factors that a court considers in determining the existence of a duty and those the trier of fact will consider in determining whether a duty was breached. (*Ballard v. Uribe, supra*, 41 Cal.3d at pp. 572–573, fn. 6.) Here, the court's observation that plaintiff did not show the officers did anything wrong reflects that plaintiff's claim is based upon a general failure to protect, rather than affirmative conduct creating a risk of harm—i.e., nonfeasance rather than misfeasance. The trial court did not err in making that observation.[3]

---

[3] In view of our conclusion that the trial court correctly determined the officers did not have a duty in tort, we need not address questions of immunity.

## DISPOSITION

The judgment is affirmed.

Blease, J., and Nicholson, J., concurred.